**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

L.N, a minor, by her parents and next friends,
Jessica North Macie and Jani North Saale,
5214 First St., N.W.,
Washington, D.C.  20011,

and

JESSICA NORTH MACIE and JANI NORTH
SAALE,
5214 First St., N.W.,
Washington, D.C.  20011,

   Plaintiffs,

   v.

DISTRICT OF COLUMBIA,
A Municipal Corporation,
One Judiciary Square,
441 Fourth Street, N.W.,
Washington, D.C. 20001,

   Defendant.

**Civil Action No. _____**

**COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF**

**Preliminary Statement**

1. This is an action brought by Jessica North Macie and Jani North Saale ("the parents"), in their own right and on behalf of their daughter, L.N., alleging that the District of Columbia Public Schools ("DCPS" or "school system"), failed to provide L.N. with the free appropriate public education ("FAPE"), to which she is entitled under the Individuals With Disabilities Education Improvement Act ("IDEA"), 20 U.S.C. §§1400 *et seq.*  DCPS denied L.N. a FAPE when it failed to provide her with an appropriate IEP and placement for the 2022-2023

and 2023-24 school years. Moreover, the Hearing Officer who heard the administrative Due Process appeal and who decided the action compounded these violations when he ignored the parents' compelling evidence and witnesses, misapplied controlling law, and denied the requested relief. In doing so, the Hearing Officer excused defendant's failure to adhere to applicable authorities governing special education and the provision of a FAPE by denying the parents their requested relief of funding and placement at The Lab School of Washington ("Lab" or "Lab School"). Due to any of these errors, the Court should reverse the Hearing Officer's Decision.

## Jurisdiction

2. This Court has jurisdiction pursuant to the IDEA, 20 U.S.C. §§ 1400 *et seq*., and 28 U.S.C. §§ 1331 and 1343. Declaratory relief is authorized by 28 U.S.C. §§ 2201 and 2202.

3. Plaintiffs have exhausted their administrative remedies and seek to reverse the order of a Hearing Officer in the Office of Dispute Resolution of the Office of the State Superintendent of Education, Case Number 2022-0092 (October 16, 2023).

## Parties

4. L.N. is an educationally-disabled student who at all times relevant to this action resided in the District of Columbia. Her parents, Jessica North Macie and Jani North Saale, bring this action on L.N.'s behalf and in their own right.

5. The District of Columbia is a municipal corporation receiving federal funds under the IDEA. 20 U.S.C. §§ 1400 *et seq*. DCPS is a local educational agency as defined by 20 U.S.C. § 1401, and as a part of the District of Columbia, receives financial assistance from the United States Department of Education. DCPS is responsible for complying with federal law

with respect to the provision of a FAPE to each educationally-disabled child in the District of Columbia.

## Factual Allegations

6.      L.N. is a ninth-grade student who currently attends The Lab School of Washington.

7.      L.N. is diagnosed with Attention Deficit/Hyperactivity Disorder - Combined Presentation ("ADHD"), a Language Disorder, and Specific Learning Disabilities ("SLD"), with impairment in Reading, Written Expression, and Mathematics.

8.      L.N. began attending her local DCPS school in first grade, Hearst Elementary School ("Hearst"), in Washington, D.C.

9.      L.N. was found eligible for special education services as a student with an SLD and provided a mix of push-in and pull-out support for mathematics.  She also had a weekly session with an outside counselor or social worker.

10.      In September 2018, L.N. underwent a psychological and education evaluation by Dr. Mary H. Beardsley and Dr. Michael D. Jasnow.  She was administered the Wechsler Intelligence Scale for Children, Fifth Edition ("WISC-V"), and demonstrated a variable profile with a 21 point range between her strongest index (Verbal Comprehension), and her weakest (Fluid Reasoning). The evaluators  noted significant difficulties with processing speed and auditory working memory.

11.      L.N.'s  parents and grandmother were given the Conners-3 Ratings Scales and the results indicated that L.N. met the criteria for a diagnosis of ADHD.  Academic testing revealed that while her basic reading skills were strong, L.N. struggled with reading comprehension,

likely due to her attention and working memory deficits. She also scored well below expectations on tests of mathematics and was diagnosed with a Disorder of Mathematics.

12. The 2018 psychological evaluation also found that L.N. was emerging as emotionally vulnerable and could become overwhelmed when faced with psychologically challenging experiences.

13. L.N.'s parents reported that she had a successful year during fifth grade, the 2019-2020 school year.

14. However, in March 2020, her fifth grade year, L.N. began virtual learning and struggled with online learning. She continued receiving tutorial support in reading and math.

15. L.N. transitioned to sixth grade at Alice Deal Middle School ("Deal"), for the 2021-2021 school year, which was completely virtual.

16. During sixth grade, L.N. made some progress with additional support from her special educator during virtual learning, but her parents were concerned she was falling behind her peers due to the virtual format and lack of individualized instruction.

17. In July 2021, L.N. underwent another psychological and educational evaluation with Dr. Beardsley and Dr. Jasnow to assess her progress and assist with identifying her ongoing educational needs.

18. On the 2021 evaluation, L.N. continued to demonstrate a variable profile, with scores ranging between average and slightly lower than average. On academic testing, L.N. earned average scores on assessments of basic reading and written language skills with some areas of deficit evident, and continued to show significant difficulty with mathematics.

19. The evaluators noted that L.N. continued to meet the criteria for a Disorder in Math, as well as ADHD due to her test results on tests of sustained attention and executive

4

functioning.  In addition, she demonstrated weaknesses with reading comprehension on both the Woodcock-Johnson IV Tests of Achievement and the Gray Silent Reading Test, warranting a diagnosis of a Disorder of Reading with Impairment in Reading Comprehension.

20.    The evaluators also described that the evaluators found that L.N. continued to struggle with complicated thoughts, feelings, and fantasies and expressed concern with how she would integrate the experiences of puberty/adolescence.  The evaluators determined that, "in a general way, a diagnosis of ongoing persistent depressive disorder/dysthymia appears warranted."

21.    L.N. continued at Deal Middle School for seventh grade during the 2021-2022 school year, but immediately began to struggle without the additional support of special education staff.

22.    In seventh grade, the communication from L.N.'s teachers was largely non-existent.  The parents repeatedly reached out to the school to find out how they could provide more support at home but received little to no feedback from the school.

23.    On September 14, 2021, the parents expressed their frustration regarding the lack of communication regarding class routines and expectations, and the lack of direction on homework routines.

24.    Partway through seventh grade, L.N.'s parents became aware that she was failing Science and Spanish, but were not contacted by her teachers regarding her failing grades.

25.    On February 7, 2022, DCPS convened an annual review of L.N.'s IEP.  At the meeting, her parents shared their concerns with her anxiety and its effect on her academics.  Her parents also requested that the school system help L.N.  to work on self-advocacy and executive functioning.

5

26.    On February 7, 2022, the IEP team did not make any substantive changes to L.N.'s service hours and continued to propose just 8 hours per week of push-in support in the general education classroom for reading, written expression, and mathematics, as well as 120 minutes per month of behavioral support services.

27.    During the remainder of the 2021-22 school year, support at school for L.N. did not improve.  The parents also felt that L.N. had not been consistently receiving the services called for on her IEP.

28.    On April 6, 2022, the parents emailed L.N.'s team at Deal to express their numerous concerns, including that she had reported that her special education teacher had left the school; they did not know who was providing her support in reading, writing, and math. They also expressed concern over the lack of communication with L.N.'s teachers, particularly in the classes she was failing, such as Spanish.

29.    On April 26, 2022, the parents followed up on their April 6th email because they had not received a response.  They also again requested a copy of L.N's IEP, the third request since the February 7, 2022 IEP meeting.

30.    Due to the failure of DCPS to appropriately address L.N.'s special education needs and failure to adequately communicate with the parents, the parents began exploring alternative options for the 2022-23 school year.  They applied, and L.N. was accepted at Lab School.

31.    On August 5, 2022, the parents served notice of their intention to enroll L.N. at Lab for the 2022-23 school year and requested that DCPS fund her placement there.

32.    On August 11, 2022, DCPS declined the request for funding at Lab and maintained that L.N. had been offered a FAPE.

33.    On July 18, 2022, Lab School completed a comprehensive speech/language

6

assessment of L.N. in order to gain an understanding of her profile and make recommendations regarding programming.  The evaluator found several weaknesses, including L.N.'s inability to understand and use age-appropriate vocabulary.  She also found that L.N. had difficulty attempting to remember sentence-level information and to follow verbally-presented, multi-step directions containing embedded concepts.  L.N. also presented with difficulty with writing conventions, language organization, and syntax.

34.     The Speech and Language evaluation diagnosed a Language Disorder and a Specific Learning Disorder with impairment in reading and written expression.    The evaluator recommended one individual 45-minute session of speech/language therapy per week.

35.      During the summer of 2022, L.N.'s parents engaged Amy Mounce, an educational consultant, to assist them with educational programming decisions.

36.      In August 2022, Ms. Mounce completed an academic assessment to determine L.N.'s progress in recent years.

37.      Ms. Mounce administered the WJ-IV and found that L.N.'s scores had declined in reading passage comprehension, sentence reading fluency, word attack, applied problems, spelling, and writing samples.  Ms. Mounce also found that L.N. scored in the Low Average range on the Broad Reading, Broad Mathematics, Academic Fluency, and Broad Achievement clusters.  She scored in the Low range on the Mathematics and Academic Applications clusters.

38.      On September 12, 2022, L.N.'s parents provided Lab School's speech/language assessment and Ms. Mounce's academic assessment to the school system for its review and consideration.  They did not receive a response to their email and no meeting was convened to review the assessments.

39.      L.N. began eighth grade in the Junior High Division at Lab in the fall of 2022

and immediately responded to the program. Her parents reported an improvement in her social and emotional functioning and lessened anxiety surrounding school. They reported that L.N. willingly did homework independently and was eager to go to school each day.

40. On December 14, 2022, Ms. Mounce completed an observation of L.N. in her math class at Lab. She noted several accommodations were provided, including small group instruction, a low student-to-teacher ratio, repetition of directions, and prompts to repeat statements due to not articulating thoughts clearly. After the observation, Ms. Mounce spoke with L.N's teacher, who shared that vocabulary was challenging for her and she often rushed herself. Ms. Mounce concluded that L.N. was appropriately placed at Lab with the supports in place.

41. In December 2022, DCPS requested that L.N's parents sign a consent form seeking documents from Lab, which they promptly signed. However, DCPS did not reach out to Lab for documents.

42. On February 3, 2023, four days before L.N.'s IEP was set to expire, DCPS first contacted the parents to schedule an IEP meeting to update the IEP.

43. The parents responded to the request to schedule the IEP meeting on February 7, 2023, and provided dates when they were available. When DCPS did not respond, the parents followed up with DCPS on February 14, and on March 3, 2023 but did not hear back from DCPS until March 17, 2023.

44. On March 17, 2023, DCPS proposed new dates to convene the IEP meeting in the end of March.

45. On March 21, 2023, the parents requested that DCPS propose new alternative dates since the parents' counsel was unavailable on the proposed dates.

46. On March 28, 2023, and April 12, 2023, the parents followed up with DCPS for alternative dates for the IEP meeting.

47. On May 1, 2023, DCPS finally responded with new dates and times for the IEP meeting. The following day, the parents responded to DCPS to confirm the date of May 9, 2023. DCPS did not confirm the IEP meeting.

48. On May 8, 2023, parents' counsel followed up with DCPS to request the draft IEP documents and determine whether the IEP meeting was going forward the next day, but did not receive a response from DCPS.

49. On May 9, 2023, the parents requested the link to the IEP meeting and the draft IEP for the IEP meeting on that day.

50. On May 19, 2023, the parents filed a request for due process.

51. An IEP meeting was eventually convened on June 16, 2023. DCPS proposed two hours per week of general specialized instruction, two hours per week of specialized instruction in reading, two hours per week of specialized instruction in written expression, and four hours per week of specialized instruction in math, all inside the general education setting. The school system also proposed 120 minutes per month of behavioral support services outside of the general education setting. The parents expressed their belief that L.N. required placement in a full-time special education program but DCPS refused to increase the special education services. Instead, DCPS team members indicated that they would consider the parents' request and again look at the service hours as they worked to finalize the documentation.

52. The parents did not receive a copy of the final IEP and meeting documentation from the June 2023 IEP meeting following the meeting, or at any point during the summer of 2023.

53.     In September 2023, the parents, through counsel, contacted DCPS seeking a copy of the IEP and documentation from the June 2023 IEP meeting.

54.     On September 25, 2023, the day disclosure documents were due for the due process hearing, counsel for DCPS filed a supplemental response to the parents' due process complaint and attached a finalized copy of L.N.'s IEP and Prior Written Notice, the first time the documentation was received by the parents and the first time they were aware of the school system's final proposal, as the final IEP differed from the draft discussed during the IEP meeting.

55.     An administrative due process hearing was convened in October 2023 before Hearing Officer Terry Michael Banks.

56.     At the outset of the hearing, the parents requested that the hearing be governed by the Prehearing Order and that the school system's supplemental response not be considered given its late filing.  The Hearing Officer allowed evidence to be presented about the June 2023 IEP, but did not permit the issues to be amended and ordered the parties to proceed with the scheduled hearing.

57.     At hearing, L.N.'s parents presented evidence and testimony from Amy Mounce, an expert in special education and the family's educational consultant; Audrey Dolginoff, the Director of Jurisdictional Services at the Lab School and an expert in special education; Gretchen Kunz, the Director of Speech Language Pathology at the Lab School and an expert in speech and language pathology; and L.N.'s mother.

58.     DCPS presented testimony at hearing from Adam Kirschenbaum, DCPS Assistant Principal; Tierra Peteet, special education teacher at Deal; Charlie Chapman, Special Education Coordinator at Deal; Hilary Katz, school social worker at Deal; Alyssa Elliott, DCPS speech

language pathologist; Stacey Gathers, Assistant Principal at Deal; and Sean Bradley, DCPS non-public monitor.

59.     The Hearing Officer issued his Decision on October 16, 2023, finding that the school system met its burden in proving it provided L.N. a FAPE for the 2022-23 and 2023-24 school years, and denied the parents their requested relief.

60.     The Hearing Officer improperly concluded that DCPS provided L.N. a FAPE in its proposed educational programs and placements.

61.     The Hearing Officer erroneously ignored evidence of L.N.'s difficulties and lack of progress while in DCPS.

62.     The Hearing Officer improperly ignored the school system's significant delays in updating L.N.'s IEP.

63.     The Hearing Officer incorrectly concluded that the school system's procedural violation of not providing L.N.'s final IEP until after the start of the 2023-24 school year did not rise to the level of a denial of FAPE and overlooking the fact that the services proposed in the final IEP differed from those proposed in the draft and discussed during the meeting.

64.     The Hearing Officer misstated the evidence.

65.     The Hearing Officer's Decision contains multiple errors of fact and law.

66.     Many of the Hearing Officer's findings of fact are not regularly made.

67.     The Hearing Officer applied incorrect legal standards in reaching his Decision.

68.     The parents are aggrieved by the Hearing Officer's Decision.

69.     The parents have exhausted their administrative remedies.

## COUNT I

(Failure to provide a Free Appropriate Public Education)

70.    Plaintiffs incorporate as though restated each of the factual allegations stated in paragraphs 1 through 69.

71.    Defendant's failure to provide L.N. with an appropriate educational program and placement violates plaintiffs' rights under the IDEA and District of Columbia law.

## COUNT II

(Failure to Order Appropriate IDEA Relief)

72.    Plaintiffs incorporate as though restated each of the factual allegations stated in paragraphs 1 through 69.

73.    The failure of the Hearing Officer to order defendant to place and fund L.N. in an appropriate program and placement violates the IDEA and District of Columbia law.

## COUNT III

(Failure of the Hearing Officer to Render a Proper Decision)

74.    Plaintiffs incorporate as though restated each of the factual allegations stated in paragraphs 1 through 69.

75.    The Hearing Officer committed error and violated plaintiffs' due process rights under the IDEA and District of Columbia law by failing to render a proper decision based on an accurate and impartial understanding of the facts.

76.    The Hearing Officer committed error and violated the plaintiffs' due process rights under the IDEA and District of Columbia law by failing to apply correct legal standards.

**PRAYER FOR RELIEF**

WHEREFORE, plaintiffs respectfully request that this Court:

1.     Issue judgment for plaintiffs and against defendant;

2.     Issue injunctive relief, vacating the order of the Hearing Officer and ordering defendant to reimburse plaintiffs for the tuition expenses and costs incurred in enrolling L.N. at Lab School for the 2022-2023 and 2023-24 school years;

3.     Order defendant to place and fund L.N. at the Lab School and declare it to be her current educational placement under the IDEA;

4.     Order defendant to pay plaintiffs' reasonable attorneys' fees and costs, including the fees and costs of this action; and

5.     Award any other relief that this Court deems just.

Respectfully Submitted,

_____/s/  Michael J. Eig_____

| | |
|---|---|
| Michael J. Eig | #912733 |
| Paula A. Rosenstock | #494580 |
| Matthew B. Bogin | #911552 |
| Meghan M. Probert | #1004929 |

MICHAEL J. EIG AND ASSOCIATES, P.C.
5454 Wisconsin Avenue
Suite 760
Chevy Chase, Maryland 20815
(301) 657-1740

*Counsel for Plaintiffs*