**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

|  |  |
|---|---|
| **L.N.**, *et al.*,<br><br>      Plaintiffs,<br><br>      v.<br><br>**DISTRICT OF COLUMBIA**,<br><br>      Defendant. | No. 24-cv-109 (TSC) |

<u>**MEMORANDUM OPINION**</u>

Plaintiffs filed this lawsuit against the District of Columbia under the Individuals with Disabilities Education Act ("IDEA") on behalf of their minor daughter, L.N., a child with attention deficit hyperactivity disorder, a language disorder, and specific learning disabilities with impairments in reading, written expression, and mathematics. *See* A.R. at 7, 9, 105, ECF No. 6. Although L.N. was making substantial progress in the regular classroom, Plaintiffs withdrew her from her D.C. public school and placed her in a specialized private school for students with disabilities. They now challenge the adequacy of two Individualized Education Plans ("IEPs") that the District developed for L.N. and seek reimbursement for the cost of private school tuition.

After a four-day administrative hearing, an independent hearing officer determined that the challenged IEPs were reasonably calculated to help L.N. make educational progress. *Id.* at 4–29. Plaintiffs then appealed that decision to this court, which referred the matter to a magistrate judge. *See* Min. Order (Jan. 16, 2024). After Judge Sharbaugh was randomly assigned, the parties filed cross motions for summary judgment. In a well-reasoned Report and Recommendation, ECF No. 15, Judge Sharbaugh recommended that the hearing officer's decision be upheld, Plaintiffs' Motion for Summary Judgment be denied, and Defendant's Cross Motion for Summary Judgment

be granted.  Plaintiffs timely objected.  *See* Pls.' Objs., ECF No. 17.  Upon *de novo* review, *see* Fed. R. Civ. Pro. 72(b)(3), this court will ADOPT the Report and ACCEPT the Recommendation, DENY Plaintiffs' Motion for Summary Judgment, ECF No. 8, and GRANT Defendant's Cross Motion for Summary Judgment, ECF No. 10.

## I.   BACKGROUND

### a.  Legal Background

Because the District of Columbia receives federal education funding, the IDEA requires it to provide disabled children with a "free appropriate public education."   20 U.S.C. § 1412(a)(1)(A).  To that end, D.C. school officials must develop, for each disabled child, "'a comprehensive strategy, known as an individualized education program, or IEP, tailored to the student's unique needs,'" and review that IEP each year.  *McLean v. District of Columbia*, 264 F. Supp. 3d 180, 183 (D.D.C. 2017) (quoting *Leggett v. District of Columbia*, 793 F.3d 59, 63 (D.C. Cir. 2015)).  An IEP should be "reasonably calculated to enable a child to make progress appropriate in light of the child's circumstances," but it need not provide an "ideal" education. *Endrew F. ex rel. Joseph F. v. Douglas Cnty. Sch. Dist.*, 580 U.S. 386, 399 (2017).

Notably, "the IDEA requires that children with disabilities receive education in the regular classroom whenever possible."   *Endrew F.*, 580 U.S. at 400 (cleaned up).  Thus, "for most children," their IEP should fully integrate them into the regular classroom while supplementing that general instruction with a reasonable level of specialized support.  *Id.*  "Removal of children with disabilities from the regular" classroom—and placement outside the general curriculum— should "occur[] only when the nature or severity of the disability . . . is such that education in regular classes with the use of supplementary aids and services cannot be achieved satisfactorily." *Z.B. v. District of Columbia*, 888 F.3d 515, 528 (D.C. Cir. 2018) (quoting 20 U.S.C.

§ 1412(a)(5)(A)) (cleaned up).  An IEP is typically adequate if it is "reasonably calculated to enable the child to achieve passing marks and advance from grade to grade." *Endrew F.*, 580 U.S. at 401 (quoting *Bd. of Ed. of Hendrick Hudson Cent. Sch. Dist. v. Rowley*, 458 U.S. 176, 203–04 (1982)).  After all, such "[p]rogress through [the general curriculum] is what our society generally means by an 'education.'"  *Id.* at 400–01.  "And access to an 'education' is what the IDEA promises."  *Id.* at 401.

If a parent is dissatisfied with their child's IEP, they are entitled to an "impartial due process hearing" before an independent hearing officer.  20 U.S.C. § 1415(f)(1)(A); *see also id.* § 1415(b)(6)(A).[1]  After giving the parties an opportunity to present evidence, the hearing officer must determine whether the IEP provides the child with a free appropriate public education.  *Id.* § 1415(f)(3)(E).  Either party may "appeal that decision to a federal district court."  *McLean*, 264 F. Supp. 3d at 183 (citing 20 U.S.C. § 1415(i)(2)(A)).

### b. Factual Background

Judge Sharbaugh carefully detailed the relevant facts, so this court will give only a brief summary.  Up until the eighth grade, L.N. attended D.C. public schools, where she received strong grades in the regular classroom with the help of some supplementary specialized instruction, *i.e.*, "push-in" support.  Specifically, across the sixth and seventh grades, L.N.'s final grades were a mix of As and Bs, with a single C in Spanish.  *See* A.R. at 91–92, 205–06.  During the middle of L.N.'s seventh grade year, in February 2022, District officials met with L.N.'s parents to discuss an IEP for 2022–2023.  *See id.* at 138.  Based on the data, the February 2022 IEP kept L.N. in the regular classroom and "carried forward the same levels" of push-in support from the February

---

[1] That said, an IEP "need not conform to a parent's wishes in order to be sufficient or appropriate." *K.S. v. District of Columbia*, 962 F. Supp. 2d 216, 221 (D.D.C. 2013).

2021 IEP that had served L.N. well: eight hours per week of specialized instruction (four hours in math, two hours in written expression, and two hours in reading), plus two hours per month of behavioral support services. R. & R. at 6; *compare* A.R. at 66–78 *with* A.R. 138–56.

As Judge Sharbaugh found, "[n]othing in the record shows that Plaintiffs raised any concerns during the meeting about the proposed special instruction hours, goals, or anything else about the IEP"—a finding that Plaintiffs have not disputed in their objections. R. & R. at 6. Nevertheless, in April 2022, L.N.'s parents emailed the District to complain about the school's lack of communication. *See* A.R. 133–34. And by the end of L.N.'s seventh grade year, her parents also became worried that, despite L.N.'s academic progress, her behavioral progress had somewhat stagnated. *See id.* at 176–80. In August 2022, L.N.'s parents informed the District that they would enroll L.N. at the Lab School, a private school for children with disabilities, and asked that the District pay L.N.'s tuition. *Id.* at 203. The District replied that although it was L.N.'s parents "right to choose a private placement," it did "not agree to bear the cost of a private placement in this case." *Id.* at 204. L.N.'s parents nevertheless enrolled her at the Lab School.

In February 2023, the District contacted L.N.'s parents to schedule a meeting to update L.N.'s IEP for 2023–2024. A.R. 227. After much delay largely attributable to the District, *see id.* at 227–37, an IEP meeting was held in June 2023. *Id.* at 349. Before the meeting, the District shared a draft IEP which proposed returning L.N. to the regular classroom at a public school with increased push-in support (as compared to the February 2022 IEP). *See id.* at 334. At the meeting, Plaintiffs' attorney "shared the family's position" that the increased support was insufficient; in their view, L.N. "need[ed] full-time special education services" and "a small support environment" outside the regular classroom. *Id.* at 343. Plaintiffs' attorney stated that the amount of specialized

support L.N. receives "should correspond to a full-time special education services placement." *Id.* at 344.

The District's finalized June 2023 IEP proposed a 25% increase in specialized instruction from the February 2022 IEP. Specifically, the IEP increased specialized instruction from eight hours per week to ten hours per week and maintained two hours per month of behavioral support services. A.R. 362. Unfortunately, Plaintiffs did not receive a copy of the finalized IEP over the summer. In August 2023, before receiving and without asking for the finalized IEP, Plaintiffs' attorney notified the District that Plaintiffs would re-enroll L.N. at the Lab School for ninth grade and again requested tuition reimbursement. *See id.* at 387, 823. About a week later, the District denied Plaintiffs' request for reimbursement, stating that it believed a free appropriate public education could be provided at Jackson-Reed High School. *Id.* at 388. At no point prior to the 2023–2024 school year did Plaintiffs request a copy of the finalized IEP. *See id.* at 387, 389; *see also* R. & R. at 8. Only in September 2023 did Plaintiffs' counsel request the finalized IEP, which the District then provided. A.R. at 397.

In October 2023, an independent hearing officer heard testimony from seven District witnesses and four Plaintiffs' witnesses during a four-day hearing. That month, the hearing officer issued a decision which determined that both the February 2022 IEP and the June 2023 IEP were reasonably calculated to enable L.N. to make appropriate educational progress in light of her circumstances. This case followed.

## II.    LEGAL STANDARDS

Plaintiffs must "prove by a preponderance of the evidence that 'the hearing officer was wrong' in concluding that [L.N.'s] IEPs were appropriate." *Edward M.R. v. District of Columbia*, 128 F.4th 290, 294 (D.C. Cir. 2025) (quoting *Reid ex rel. Reid v. District of Columbia*, 401 F.3d

516, 521 (D.C. Cir. 2005)).  In reviewing the hearing officer's decision, the court "must give 'due weight' to the hearing officer's determinations," so long as those determinations are reasoned and supported.  *Z.B.*, 888 F.3d at 523 (quoting *Rowley*, 458 U.S. at 206).  A "hearing officer's findings based on credibility determinations of live witnesses are given particular deference."  *McAllister v. District of Columbia*, 45 F. Supp. 3d 72, 76 (D.D.C. 2014) (cleaned up).

## III.    DISCUSSION

Plaintiffs' core claim—that the February 2022 and June 2023 IEPs failed to provide L.N. with "enough small-group or individual education, especially [compared] to the full-time special education offered at the Lab School"—stumbles out the gate.  *Z.B. v. District of Columbia*, 888 F.3d 515, 528 (D.C. Cir. 2018).  As the D.C. Circuit has explained, "that argument runs up against the IDEA's imperative that, to 'the maximum extent appropriate,' public schools provide students with disabilities an education in the 'least restrictive environment' possible."  *Id.* (quoting 20 U.S.C. § 1412(a)(5)(A)).  Removal "from the regular" classroom should occur "*only* when the nature or severity of the disability of a child is such that education in regular classes with the use of supplementary aids and services cannot be achieved satisfactorily.'"  *Id.* (quoting 20 U.S.C. § 1412(a)(5)(A)) (emphasis added).  Indeed, the Supreme Court has recently reaffirmed that education should be provided "in the regular classroom '*whenever possible*.'"  *Id.* (quoting *Endrew F.*, 580 U.S. at 400) (emphasis added).  So long as an IEP is reasonably calculated to enable a student to "achieve passing marks and advance from grade to grade," it will generally be deemed appropriate.  *Id.* at 401 (quoting *Rowley*, 458 U.S. at 203–04).  And here, L.N. was advancing from grade to grade in the regular classroom before her parents placed her at the Lab School.

Against this backdrop, Plaintiffs have not shown that the hearing officer erred in upholding either IEP.  As the hearing officer found, "the record support[ed] the opinions of [the District's]

witnesses who testified that [L.N. had] made consistent progress in a general education environment" with eight hours of push-in support. A.R. at 22. The data bears that out: during sixth and seventh grade, L.N.'s final grades were a mix of As and Bs, with a single C in Spanish. *See id.* at 91–92, 205–06. The hearing officer thus properly rejected the contrary testimony by Plaintiffs' witnesses, who maintained that L.N. "requires a full-time special education placement in a private school" and "was incapable of making progress" without "full-time support." *Id.* at 21, 23. That testimony is difficult to square with L.N.'s "consistent record of academic progress . . . in large, general education classes." *Id.* at 22.[2]

The hearing officer likewise had good reason to discount Plaintiffs' concerns about L.N.'s behavioral progress. L.N. "presented no behavioral issues" during her time in D.C. public schools, and a 2021 examination "found that executive functioning was not a problem when [L.N.] was on her[] prescribed ADHD medication." A.R. 22. And although Plaintiffs' witnesses raised concerns about anxiety, L.N. had never been diagnosed with anxiety and she scored in the low range for anxiety on the Child and Adolescent Trauma Screen. *Id.* at 23. Even crediting that L.N. experiences some anxiety, nothing in the record suggests that the specialized instruction and behavioral support built into the IEPs was insufficient to address it.

In the end, Plaintiffs' core position is in deep tension with the IDEA's basic structure. The statute explicitly mandates education in the regular classroom "to the maximum extent appropriate," and reserves removal from the regular classroom for rare cases in which the student's

---

[2]  Plaintiffs contend that the hearing officer should have credited their witnesses—L.N.'s Lab School teachers—because those witnesses had more recent and more extensive familiarity with L.N. *See* Pls.' Objs. at 6–7. But Plaintiffs' witnesses undermined their own credibility by insisting that L.N. required full-time special education despite her strong performance in the regular classroom with eight hours of push-in support. The District's witnesses—by contrast— offered testimony consistent with the actual record of L.N.'s achievement.

disability is so severe that education cannot be satisfactorily achieved in the regular classroom even with push-in support.  20 U.S.C. § 1412(a)(5)(A).  L.N. does not warrant this drastic intervention.  To the contrary, with eight hours of weekly push-in support, L.N. earned mostly As and Bs in the regular classroom and advanced from grade to grade—the very benchmark the Supreme Court has identified as the hallmark of an adequate IEP. *See Endrew F.*, 580 U.S. at 401.

Plaintiffs resist this straightforward conclusion.  They note that although L.N. made progress on her IEP goals and advanced from grade to grade with strong marks, she had not fully achieved a single goal on her February 2021 IEP by February 2022.  Pls.' Objs. at 2.  They also note that during some reporting periods, L.N. made "no progress" on some of her behavioral goals, though she progressed on others.  *See* A.R. 173–74, 179–80.  But as the hearing officer explained, that L.N. "had not mastered . . . the goals" of the February 2021 IEP "does not mean [she] made no progress throughout the year."  *Id.* at 21.  And an IEP need not produce "mastery," it need only be "reasonably calculated to produce progress."  *Id.* at 21–22.  Although the court appreciates that Plaintiffs want what is best for their child, the IDEA requires only that an IEP be "reasonable," not "ideal."  *Endrew F.*, 580 U.S. at 399; *see also Leggett v. District of Columbia*, 793 F.3d 59, 70 (D.C. Cir. 2015) ("A public school district need not guarantee the best possible education or even a potential-maximizing one." (cleaned up)).

Finally, Plaintiffs argue that the District's delay in furnishing them a copy of the finalized June 2023 IEP denied L.N. a free appropriate public education because the District provided the finalized IEP only after L.N.'s ninth-grade year began.  *See* Pls.' Objs. at 3.  Even assuming this constituted a procedural violation, it does not follow that L.N. was denied a free appropriate public education.  An IDEA procedural violation is actionable "only if [it] affected the student's substantive rights."  *Lesesne ex rel. B.F. v. District of Columbia*, 447 F.3d 828, 834 (D.C. Cir.

2006). "A delay [in providing a student with an IEP] does not affect substantive rights if the student's education would not have been different had there been no delay." *Leggett*, 793 F.3d at 68 (cleaned up). That is precisely the case here. Plaintiffs decided to re-enroll L.N. at the Lab School in early August 2023—before the school year began, before they had received the finalized IEP, and without ever having followed up with the District to request the finalized IEP. *See* A.R. at 387, 389. That Plaintiffs did not bother to request the IEP indicates that it would not have swayed their decision. To the contrary, Plaintiffs already understood the basic contours of the District's plan from the June 2023 meeting. They knew that the District was contemplating a moderate increase to push-in support that was far short of the "full-time special education services" they demanded. *Id.* at 343–44. The hearing officer therefore did not err in determining that the finalized IEP—which kept L.N. in the regular classroom with ten hours of weekly push-in support—would not have satisfied Plaintiffs' demands and would have made no difference to their decision to keep L.N. at the Lab School. Any procedural violation therefore did not affect L.N.'s substantive rights.

## IV.   CONCLUSION

For the reasons explained above, the court will ADOPT the report and ACCEPT the recommendation of Judge Sharbaugh, DENY Plaintiffs' Motion for Summary Judgment, and GRANT Defendant's Motion for Summary Judgment. A separate order will follow.

Date: May 5, 2026

*Tanya S. Chutkan*
_____
TANYA S. CHUTKAN
United States District Judge